IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| MICHAEL STEVEN KAPLAFKA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 08-0933-CV-W-GAF |
| | ) | |
| HICKMAN MILLS SCHOOL DISTRICT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Presently before the Court is Defendant Hickman Mills School District ("Hickman Mills") Motion for Summary Judgment filed pursuant to Fed. R. Civ. P. 56. (Doc. # 56). Hickman Mills argues no genuine issues of material fact remain and summary judgment in its favor is appropriate. *Id.* Plaintiff Michael Steven Kaplafka ("Plaintiff") opposes the Motion. (Doc. # 68). For the following reasons, Hickman Mills's Motion is **GRANTED**.

## DISCUSSION

**I.     Factual and Procedural Background**[1]

*A.     Leave Policies*

---

[1] Hickman Mills filed a series of Motions to Strike (Docs. ## 86-91) various proposed statements of facts and affidavits filed in conjunction with Plaintiff's Opposition Brief. The Court notes many of the bases for objection are valid but declines to rule due to the shear volume of the requests. Therefore, Hickman Mills's Motions to Strike are **DENIED**. However, for purposes of the summary judgment motion, the Court considered the Motions to Strike as additional briefing on the relevancy, materiality, and admissibility under the Rules of Evidence when setting forth the fact section in this Order.

1

Plaintiff, a Caucasian male over 40 years of age, began employment with Hickman Mills in May 1992 in its Building and Grounds Department ("Buildings & Grounds"). (Complaint, ¶ 4; Answer, ¶ 4; M. Kaplafka Depo., 26:25-27:5, 42:24-43:5). On July 1 of each year, Hickman Mills employees, including Plaintiff, received their new allocations of vacation days and sick days. (M. Kaplafka Depo., 378:3-10). In Plaintiff's case, he received 20 days of vacation and 12 days of sick leave. *Id.* at 168:6-13. Employees were allowed to designate time off as vacation time either prior to or after taking it. (Silvers Depo., 60:11-21). Additionally, Plaintiff participated in a sick pool, but never attempted to withdraw any days from it. (M. Kaplafka Depo., 168:14-170:19). The written descriptions of Hickman Mills's vacation and sick leave policies are found in manuals, which are kept in hard-copy form at the main office or electronically on the school's website. (Silvers Depo., 32:21-25).

Over the years, an unwritten policy concerning so called "comp time" and "dock time" had been used within Building & Grounds. (HMS Leave & Vacation Policies; M. Kaplafka Aff., ¶ 31; 2005 Evaluation). Comp time arose when an employee worked overtime. (M. Kaplafka Aff., ¶ 31). For every hour of overtime worked, an employee acquired one-and-a-half (1.5) hours of comp time, which could then be used in lieu of working regular hours. *Id.* Like vacation time, comp time could be approved ahead of time or after the fact. (Silvers Depo., 61:19-22). "Dock days" or "dock time" accrued when a Hickman Mills employee was scheduled to work but did not and the missed time was not due to an excused vacation or sick leave day. (M. Kaplafka Depo., 193:25-194:14). Building & Grounds employees had a goal of less than four (4) dock days and less than 12 dock hours. (2005 Evaluation).

B.  *Events Leading to and Including Plaintiff's Termination*

During 2007, members of Hickman Mills's Board of Education (the "Board") complained to Associate Superintendent Mitch Nutterfield, a Caucasian male over the age of 40, about the poor physical condition of the schools within the school district. (Nutterfield Aff., ¶¶ 4, 8-11). Mr. Nutterfield, as the administrator who oversaw the operation of Buildings & Grounds, determined the problem was, in part, caused by the poor attendance of employees in that department. *Id.* at ¶¶ 5, 8-11. In particular, Mr. Nutterfield was concerned about the use of "dock days" and wanted to ensure Building & Grounds employees showed up for work unless they had an approved absence. *Id.* at ¶¶ 10-11. During 2007, he stressed to Building & Grounds employees that it was important for them to be present at work unless they had an excused absence, that their positions were full-time and not part-time, and that the policies concerning approved and unapproved absences would be enforced. *Id.* at ¶ 11.

After a report was prepared detailing the attendance of Building & Grounds employees for the period from July 1, 2007, through October 31, 2007, Mr. Nutterfield recommended to the Board in a Memorandum dated November 20, 2007, that Plaintiff be terminated for his attendance issues. (11/20/2007 Memo). He did so because, according to the report, Plaintiff had accrued 12 dock days, had used three (3) days of comp time, had exhausted his sick leave, and had only one-and-a-half (1.5) days of vacation time remaining. *Id.* Mr. Nutterfield further justified his recommendation by referencing prior warnings Plaintiff had received regarding his attendance issues. *Id.*

From nearly the beginning of his employment, performance evaluations indicated Plaintiff had attendance issues. (1993, 1996-2000, 2003 Evaluations, p. 1). In his 2003 performance evaluation, Plaintiff was warned he may be disciplined if his attendance did not immediately

3

improve. (2003 Evaluation, p. 1). During 2007, Plaintiff received two written warnings, which advised him "any further occurrences may result in a more severe disciplinary action up to and including dismissal." (1/3/2007 Warning; 8/23/2007 Warning). Plaintiff acknowledged receipt of the warnings by signing them. *Id.* The second of these two warnings, dated August 23, 2007, indicated Plaintiff had already accrued seven (7) dock days for the then-current fiscal year.[2] (8/23/2007 Warning).

On December 3, 2007, Plaintiff received a document entitled "Disciplinary Action for Unsatisfactory Attendance." (M. Kaplafka Depo., 210:5-12; Suspension Ltr.). The document indicated Plaintiff had accrued ten (10) additional dock days[3] since his August 2007 written warning and advised him that he was being suspended pending the Board's approval of his termination for unacceptable attendance. (Suspension Ltr.). Thereafter, on December 18, 2007, the Board terminated Plaintiff's employment with Hickman Mills. (1/3/2008 Ltr.). Plaintiff was notified of this decision in a letter dated January 3, 2008. *Id.*

---

[2]Plaintiff contends this calculation was incorrect, arguing Hickman Mills's attendance records are inconsistent with each other. However, a thorough review of the time sheets submitted for that period (Doc. # 68-6), the payroll worksheet (Doc. #68-7), and the Employee Detail Information report (Doc. # 68-8), reveals Plaintiff's assertion is faulty. Hickman Mills's records consistently showed Plaintiff accrued seven (7) dock days or more prior to the end of the pay period including August 23, 2007.

While the Court did notice other minute discrepancies in the various attendance records, none of them alter Mr. Nutterfields's ultimate determination that, as of the date of his Memorandum to the Board, Plaintiff had only one-and-a-half (1.5) hours of vacation leave and no sick leave left and was well over the departmental goal of four (4) dock days and 12 dock hours. (*See* Doc. ## 68-5, 68-6, 68-7, 68-8).

[3]Plaintiff again disputes this calculation, but admits he had accrued additional dock days between August and December 2007. (M. Kaplafka Depo., 211:7-15).

## C. Personal Issues with Ken Silvers

In at least two written documents drafted after receiving his suspension letter, Plaintiff and/or his wife did not complain of race or age discrimination, but rather indicated his termination was due to a personal vendetta against him by Building & Grounds Director Ken Silvers, a Caucasian male over 40 years of age. (12/18/2007 Email; Unemployment Application; Silvers Depo., 6:2-7:3, 84:14-21). Plaintiff readily admits he never got along with Mr. Silvers from the time he became Plaintiff's supervisor and friction always existed between the two men. (M. Kaplafka Depo., 70: 9-11, 71:10-15). Plaintiff believes the animosity stems from his willingness to speak out about issues arising in Building & Grounds and his questioning of Mr. Silvers's authority; Plaintiff believes these things caused Mr. Silvers's desire to terminate Plaintiff's employment. *Id.* at 71:16-25, 73:17-74:13. Mr. Silvers testified his only issue with Plaintiff was attendance. (Silvers Depo., 43:18-23).

It is undisputed that, in 2006, Plaintiff and Roland Sherman, a Caucasian male over 40 years of age, both applied for the position of Lead Groundskeeper. (Cooper Aff., ¶ 19). Mr. Silvers stated to Orville Cooper, an employee in Building & Grounds, that as long as he (Mr. Silvers) was there, Plaintiff would not get the Lead Groundskeeper position. *Id.* at ¶¶ 20-21. Also, Mr. Silvers repeatedly stated he wanted to "get rid of" Plaintiff. (Kabelis Aff., ¶ 10; Cooper Aff.., ¶ 23).

Additionally, Plaintiff contends Mr. Silvers denied him light duty and forced him to take three (3) days off when Plaintiff injured his back, even though an African-American employee, Sean Seals, had been given light duty and had a special position created for him following multiple back injuries. (Joint Kaplafka Aff., ¶ 7; Enke Depo., 32:20-33:1, 37:12-38:1; Silvers Depo., 64:13-24). Further, contrary to Hickman Mills's policy, Mr. Silvers refused to provide Plaintiff copies of his

5

time sheets and records the first time Plaintiff requested them during the fall of 2007. (Kabelis Aff., ¶ 19; S. Kaplafka Depo., 46:1-10; Silvers Depo., 56:14-24). While Plaintiff has received some records, he contends he has never received all records despite at least three requests. (S. Kaplafka Depo., 49:10-50:18).

### D. *Issues Involving Race*

Plaintiff contends African-American employees were assigned easier and less dangerous jobs and Caucasian employees were given harder work and substandard equipment. (M. Kaplafka Depo., 138:2-13). However, besides the circumstances surrounding Mr. Seals, Plaintiff does not set forth any facts supporting this proposition. Mr. Silvers acknowledges Building & Grounds employees complained to him about perceived differences in treatment between Caucasian and minority employees; however, he did not address these concerns in a meeting or note them in employee files. (Silvers Depo., 18:5-19:8). Additionally, when hired as a consultant, Betty Brown determined some employees made comments regarding race that could be viewed as inappropriate. (Brown Depo., 58:6-59:7).

In response to the conflict in Building & Grounds between employees of different races, Hickman Mills initiated a racial sensitivity training program called "Afraid of the Dark" during the fall of 2007. (Kabelis Aff., ¶ 20; Enke Depo., 21:4-23). Mr. Nutterfield required all employees to attend. (Enke Depo., 21:4-23). It is undisputed that race relations worsened after the "Afraid of the Dark" presentation. (Cooper Aff., ¶¶ 12-13; Kabelis Aff., ¶ 21).

Plaintiff further contends Hickman Mills had a hiring and promotion policy discriminatory to Caucasians. Mr. Silvers purportedly stated to Mr. Cooper that Building & Grounds had to hire or promote African-American employees even if there was someone more qualified. (Cooper Aff.,

6

¶ 7). Since 2005, the number of African-American Building & Grounds employees has, in fact, increased. *Id.* at ¶ 9.

E.  *Issues Involving Age*

According to Plaintiff, older workers were assigned all the hard jobs and were required to operate older equipment and trucks. (M. Kaplafka Depo., 63:6-64:14; 129:19-22). Plaintiff contends younger employees were not required to drive a truck; however, Plaintiff testified the one Building & Grounds truck was a stick shift and "the younger guys can't even drive a stick shift." (M. Kaplafka Depo., 63:17-19; 64:7-14).[4] Plaintiff also makes conclusory statements that he was denied vacation leave, but younger employees were allowed to use it. *Id.* at 25:23-253:6. Plaintiff further testified he was denied overtime, but no allegations concerning overtime and younger workers have been presented. *Id.* at 254:20-21.

Mr. Silvers allegedly told Plaintiff he was "getting too old for this job" and that he was "getting too hurt." *Id.* at 110:15-19. Plaintiff recalled Mr. Silvers telling him that "if you're feeling your age that bad . . . [we] need some new, young blood around here . . . that will do your job." *Id.* at 118:1-5. According to Plaintiff, Mr. Silvers stated on a few occasions that he could replace Plaintiff at half the price. *Id.* at 119:22-120:3. Nevertheless, Plaintiff also testified during his deposition he believed he would have been discharged in December 2007 even if he were younger than 40 years of age. *Id.* at 268:1-6.

---

[4]Plaintiff also provided a statement from Mr. Cooper in which he asserted he and Plaintiff were required to carry buckets up ladders because younger employees refused to do so. (Cooper Aff., ¶ 18). The younger employees' purported refusal is inadmissible hearsay and cannot be considered by the Court when ruling on this Motion. *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 817 (8th Cir. 2010).

### F. *Procedural History*

On August 21, 2008, Plaintiff dually filed his Charge of Discrimination (the "Charge") against Hickman Mills with the Missouri Commission on Human Rights (the "MCHR") and the Equal Employment Opportunity Commission (the "EEOC"). (Charge). In his Charge, Plaintiff alleged he had been discriminated against from November 1, 2007, to December 3, 2007, based on his race and his age. *Id.*

On September 8, 2008, the EEOC issued a Right to Sue letter to Plaintiff, and the MCHR issued a Right to Sue letter on September 16, 2008. (EEOC Right to Sue; MCHR Right to Sue). During his deposition, Plaintiff testified that he had no reason to believe he had received the EEOC Right to Sue letter on any date other than September 9, 2008. (M. Kaplafka Depo., 224:13-225:18). In her affidavit, Mrs. Kaplafka claims, upon receipt of the EEOC Right to Sue letter, she calculated the 90-day period. (S. Kaplafka Aff., ¶ 13). She further swears she accompanied her husband on the final day of the 90-day period, as she calculated it, to the Courthouse for the Western District of Missouri to file this lawsuit. *Id.* at ¶ 15. Since the filing of the pending Motion, Mrs. Kaplafka has reviewed a 2008 calendar and has determined Plaintiff received the EEOC Right to Sue letter on September 15, 2008. *Id.* at ¶ 17. Both Plaintiff and his wife state, during 2007 and 2008, it was not unusual for mail to be received at their residence seven (7) to ten (10) days after it was postmarked. (M. Kaplafka Aff., ¶ 7; S. Kaplafka Aff., ¶ 8).

Plaintiff filed suit in this Court on December 15, 2008. (Doc. # 4). On August 13, 2009, Plaintiff filed his Second Amended Complaint (the "Complaint"), alleging both Hickman Mills and Defendant Betty Brown discriminated, harassed, and retaliated against him on the basis of his race and his age in violation of (1) the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010, *et seq.* (the

"MHRA"); (2) Title VII of the Civil Rights Act of 1991, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); (3) his right to contract under 42 U.S.C. § 1981; and (4) the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (the "ADEA"). (Complaint). On June 4, 2010, Plaintiff and Ms. Brown entered into a Stipulation of Dismissal, wherein all counts against Ms. Brown were dismissed with prejudice. (Docs. ## 122-23).[5]

## II. Standard

Pursuant to Fed. R. Civ. P. 56, summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual disputes that are irrelevant or unnecessary will not be considered. *Id.* In the absence of a factual dispute relating to an essential element of a party's claims, the Court will proceed to determine whether that party is entitled to judgment as a matter of law. *See E.E.O.C. v. Woodbridge Corp.*, 263 F.3d 812, 814 (8th Cir. 2001).

In determining whether summary judgment is appropriate, the Court views all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *See Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). Nonetheless, Plaintiffs may not rely on conclusory statements but must "point to evidence in the record sufficient to raise a genuine issue for trial." *Jeseritz v. Potter*, 282 F.3d 542, 545-46 (8th Cir. 2002) (quotations and citations omitted).

---

[5]Ms. Brown's Motions (Docs. ## 58, 75-79, 82, 120) are **DENIED** as moot.

**III.   Analysis**

*A.   MHRA Claims*

To initiate a claim under the MHRA, a plaintiff must first file a charge of discrimination with MCHR within 180 days of the alleged act of discrimination. *Holland v. Sam's Club*, 487 F.3d 641, 643-44 (8th Cir. 2007). Plaintiff concedes he has not met this requirement; therefore, Hickman Mills's Motion is **GRANTED** as to all claims arising under the MHRA.

*B.   Title VII Claims*

A plaintiff must file suit within 90 days of receipt of a right to sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1). Rule 6(a) of the Federal Rules of Civil Procedure provides that, if the last day of the period falls on a Saturday, Sunday, or legal holiday, then the period continues until the end of the next day that is not a Saturday, Sunday, or legal holiday. Here, Plaintiff's EEOC Right to Sue letter bears an issue date of September 8, 2008. Ninety days from that date was Sunday, December 7, 2008. Because the last day fell on a Sunday, the prescribed period ended on Monday, December 8, 2008. But, Rule 6(d) "adds a rebuttable presumption of three days' mailing time to be added to a prescribed period whenever a statutory period begins on receipt or service of notice." *Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 108 n.5 (3d Cir. 2003). *See also Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984). Therefore, under Rule 6, Plaintiff's complaint should have been filed on or before December 11, 2008. *See* Fed. R. Civ. P. 6 cmt. 2005 Amendments.

However, Plaintiff did not file the present suit until December 15, 2008. To rebut the presumption created by Rule 6(d), Plaintiff argues his wife computed the 90-day period on the date he received the EEOC Right to Sue letter and he filed his suit on the last day of that period.

Assuming Mrs. Kaplafka's determination is correct, Plaintiff received the EEOC Right to Sue letter on September 15, 2008, one week after its issue date. Plaintiff explains the purported seven-day delivery period by representing that his mail service is slow, and therefore, he likely did not receive the letter until September 15, 2008. This position is contrary to Plaintiff's deposition testimony during which he stated he had no reason to believe he received the Right to Sue letter on any date other than September 9, 2008. But, Plaintiff argues, he made this statement without reference to any calendar. Given that the facts must be viewed in a light most favorable to Plaintiff at this stage, the Court will consider his Title VII claims timely filed for purposes of the pending Motion.

Even so, Plaintiff's Title VII claims for race discrimination and harassment against Hickman Mills cannot survive summary judgment. Plaintiff has not raised material factual disputes demonstrating his race played any role in his termination or was the basis for any alleged harassment or hostile work environment. Absent direct evidence, the Court analyzes race discrimination and harassment claims under the *McDonnell Douglas* burden-shifting test. *King v. Hardesty*, 517 F.3d 1049, 1057 (8th Cir. 2008). Under this analysis, the employee must first prove his prima facie case. *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832 (8th Cir. 2002). If he successfully does so, the burden of production shifts to the employer to show a legitimate, non-discriminatory reason for its actions. *Id.* at 833. The burden then shifts back to the employee to demonstrate the employer's proffered reason is merely pretextual. *Id.*

First, Plaintiff cannot prove the prima facie case for race discrimination, and even if he could, he cannot show Hickman Mills's explanation for his discharge – excessive absences – was pretextual. To prove the prima facie case for race discrimination, Plaintiff must show the following: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate job

11

expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. *Fields v. Shelter Mut. Ins. Co.*, 520 F.3d 859, 864 (8th Cir. 2008).

It is undisputed that Plaintiff is a member of a protected class and that he suffered an adverse employment action when he was terminated. However, Plaintiff has not provided evidence that he was meeting Hickman Mills's legitimate job expectation of attendance unless excused. That Plaintiff had not been disciplined in the past for his attendance issues is of no consequence. The undisputed facts demonstrate that, in 2007, the Board was demanding improved conditions of the school facilities, and Mr. Nutterfield determined that one way to meet those demands was enforcing attendance policies. Plaintiff does not deny he was aware that policies would be enforced, and any argument to the contrary would be against the evidence. In 2007, Plaintiff signed two separate written warnings about his unacceptable attendance, both indicating he could face termination if his attendance did not improve. Despite this, Plaintiff continued to accrue dock days. Given this, no reasonable jury would find that Plaintiff was meeting legitimate job expectations. Further, he has not provided any evidence that minority employees in Building & Grounds retained employment with Hickman Mills despite similar attendance issues.[6]

Nevertheless, even assuming Plaintiff has succeeded in proving his prima facie race discrimination case, he is unable to demonstrate Hickman Mills's legitimate, non-discriminatory explanation for his discharge is pretextual. To prove pretext, a plaintiff may succeed under two

---

[6]Plaintiff did present evidence that two individuals, Ken Shaw and John Jeffries, had similar dock time to him. (Payment History). However, Mr. Shaw is a Caucasian male over the age of 40, and Plaintiff has provided no evidence that Mr. Jeffries is a minority employee, under the age of 40, or a Building & Grounds employee. (M. Kaplafka Depo., 164:14-19).

12

routes: (1) indirectly by showing that the employer's proffered explanation is unworthy of credence because it has no basis in fact; or (2) directly by persuading the Court that a prohibited reason more likely motivated the employer. *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1120 (8th Cir. 2006) (internal quotation marks and citations omitted). Hickman Mills's reason for discharge – excessive absences – is supported by the record. It is undisputed that, by December 3, 2007, Plaintiff was acquiring dock days for the 2007-2008 school year and had been warned in writing on two separate occasions during the past year of his attendance issues. Thus, the first route to prove pretext cannot be established.

As to the second route, Plaintiff's argument faces a similar fate. Plaintiff has provided no evidence that similarly situated minority employees were treated differently than him, that is, minority employees were not discharged after having excessive absences. He has only provided evidence that Hickman Mills intended to fill openings in Building & Grounds with minority applicants and then did so, that a racial sensitivity program was conducted, and that Caucasian employees complained to Hickman Mills management about a perceived difference in treatment between different racial groups. These facts do not demonstrate, or even imply, Hickman Mills sought to terminate Plaintiff to create an opening for a minority applicant. *See Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 779 (8th Cir. 1995) (holding that a plaintiff must establish some causal connection between a decision-maker's non-contemporaneous statements and a resolution to discriminate). While it appears racial tensions did exist at Hickman Mills, these facts do not persuade the Court, nor would they persuade a reasonable jury, that Hickman Mills's decision to terminate Plaintiff's employment for excessive absences was pretextual.

Plaintiff additionally alleges Hickman Mills is liable for harassment by creating a hostile work environment.

> To sustain a claim against an employer for a racially hostile work environment, a plaintiff is required to show: (1) he or she is a member of a protected group, (2) he or she was subjected to unwelcome harassment, (3) the harassment was based upon race, (4) the harassment affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the racially discriminatory harassment and failed to take prompt and effective remedial measures to end the harassment.

*Willis v. Henderson*, 262 F.3d 801, 808 (8th Cir. 2001). The standards for judging hostility "are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted). To determine whether an environment is hostile, the fact-finder must look at all the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Further, the Supreme Court has made it clear that "conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (internal quotation marks and citations omitted). "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. *Id.*

Guided by these principles and viewing the facts in a light most favorable to Plaintiff, it cannot be said the alleged harassing conduct was so extreme that it altered the terms and conditions of Plaintiff's employment. While Ms. Brown did find some employees made racial comments that could be viewed as inappropriate, noticeably absent are any allegations of threats of physical violence against or humiliation of Caucasians. Plaintiff makes conclusory statements that minority

14

employees were given easier and less dangerous work assignments and better equipment as compared to the Caucasian employees. However, with the exception of the circumstances surrounding Mr. Seals[7], Plaintiff's opposition brief is void of any examples of how minority employees received preferential treatment. Plaintiff also makes no argument and presents no evidence that the alleged harassment based on race effected a term, condition, or privilege of his employment. Further, to the extent these issues were present, Hickman Mills attempted to take remedial measures to address the problems by conducting a racial sensitivity program. Summary judgment on the Title VII discrimination and harassment claims is, therefore, **GRANTED.**

C. *Section 1981 Claims*

"A federal action to enforce rights under § 1981 against a state actor may only be brought pursuant to § 1983." *Artis v. Francis Howell N. Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1181 (8th Cir. 1998) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989)). Here, Plaintiff raised no claim pursuant to § 1983. As Hickman Mills is a state entity, it cannot be liable under § 1981. *Id.* Accordingly, Hickman Mills's Motion for Summary Judgment on all § 1981 claims is **GRANTED**.[8]

---

[7]To the extent Plaintiff makes a disparate treatment claim with respect to this instance, the Court notes Mr. Seals suffered from multiple back injuries while Plaintiff complained of back pain on one occasion. Based on these facts, it cannot be said the two men were similarly situated.

[8]Even if Plaintiff had correctly pled his § 1981 claims, summary judgment would still be granted on the § 1981 discrimination and harassment claims for the same reasons summary judgment is granted on his Title VII discrimination and harassment claims. *See Fields*, 520 F.3d at 863 n.3 ("Because [the plaintiff's] Title VII and § 1981 claims set forth parallel, substantially identical, legal theories of recovery, we apply the same analysis to both.").

D.   *ADEA Claims*

The ADEA prohibits employers from discriminating against employees on the basis of age. 29 U.S.C. § 623(a)(1). Like claims under Title VII, ADEA claims are examined under the *McDonnell Douglas* framework if no direct evidence of discrimination is presented. *See Thomas v. Corwin*, 483 F.3d 516, 528 (8th Cir. 2007). To establish a prima facie claim of age discrimination, Plaintiff must show (1) he was at least forty years old; (2) he was meeting Hickman Mills's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees outside the class were treated more favorably. *Id.* Just as his race discrimination claims under Title VII failed, so too must his ADEA claims. Plaintiff has not provided any evidence that Hickman Mills retained similarly situated, younger employees despite excessive absences, and he cannot prove he was meeting Hickman Mill's legitimate performance expectation, namely attendance expectations. *See supra* at Sec. III.B.

Plaintiff's failure to establish the prima facie requirements alone dooms his ADEA discrimination claim. However, Plaintiff also cannot demonstrate Hickman Mills's legitimate, non-discriminatory reason – excessive absences – is merely pretextual. As discussed in relation to the Title VII claims, Plaintiff cannot establish pretext. *See supra* at Sec. III.B.

First, Hickman Mills's legitimate, non-discriminatory explanation for discharge does have a basis in fact. *Id.* Next, Plaintiff's argument that his age is more likely the reason for his discharge is equally unavailing. That younger employees were not required to operate a manual truck, which he admits they could not drive because they were unable to operate a stick shift,[9] does not support

---

[9]To the extent Plaintiff asserts this equipment assignment constitutes disparate treatment, such an assignment does not rise to the level of an adverse employment action. *See Thomas*, 483 F.3d at 528-29 ("An adverse employment action is a tangible change in working conditions that

16

Plaintiff's conclusory statement that younger workers were given less dangerous jobs or received preferential treatment.

Mr. Silvers's statements regarding his wish to hire younger employees do not render Hickman Mills's explanation for Plaintiff's discharge pretextual. *See Wittenburg v. Am. Express Fin. Advisors, Inc.*, 464 F.3d 831, 837 (8th Cir. 2006) (stating generalized statements regarding a company's willingness to hire younger employees does not evince a discriminatory policy or practice). While Mr. Silvers was Plaintiff's supervisor, Mr. Nutterfield made the determination to recommend Plaintiff's termination to the Board based on a report that detailed employees' absences. Thus, Plaintiff has failed to show a causal relationship between Mr. Silver's comments and Plaintiff's termination. *See id.* ("A plaintiff must establish some causal relationship to show the significance of decision-makers' non-contemporaneous statements, or statements made by persons other than the relevant decision-maker, to the resolution of the ultimate issue of intentional discrimination."). Hickman Mills's Motion is **GRANTED** on the ADEA discrimination claim.

## CONCLUSION

Plaintiff conceded he is barred from bringing claims under the MHRA, and his § 1981 claims cannot be brought against a state entity. Plaintiff cannot prove the prima facie cases for his Title VII discrimination and harassment claims and his ADEA discrimination claim, and therefore, these claims fail as a matter of law.[10] For these reasons, Hickman Mills's Motion for Summary Judgment is **GRANTED**.

---

produces a material employment disadvantage.").

[10]Plaintiff's Title VII retaliation claim and ADEA harassment and retaliation claims are still pending. Hickman Mills did not address these claims in its briefing, and when viewing the facts in a light most favorable to Plaintiff, they are not barred by any procedural requirement. *See* Doc. ## 56-57, 85.

**IT IS SO ORDERED.**

                s/ Gary A. Fenner
                Gary A. Fenner, Judge
                United States District Court

DATED: June 8, 2010